141 N.J. Super. 317 (1976)
358 A.2d 212
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
ROBERT SEMPSEY, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Submitted April 13, 1976.
Decided May 7, 1976.
*319 Before Judges KOLOVSKY, BISCHOFF and BOTTER.
Mr. Stanley C. Van Ness, Public Defender, attorney for appellant (Mr. William E. Norris, Assistant Deputy Public Defender, of counsel and on the brief).
Mr. William F. Hyland, Attorney General of New Jersey, attorney for respondent (Ms. Susan W. Sciacca, Deputy Attorney General, of counsel and on the brief).
The opinion of the court was delivered by BISCHOFF, J.A.D.
*320 Defendant was charged in two multi-count indictments with offenses arising out of his entry into an apartment on September 26, 1973. He was tried and convicted of the following offenses against Miss W as charged in Indictment #189-73S: count 1  breaking and entering with intent to rape; count 2  breaking and entering with intent to rob; count 3  assault with intent to rape; count 4  robbery; count 5  robbery while armed with a knife; count 6  robbery while armed with a gun, and count 7  threat to kill. He was also convicted of the following offenses against Miss O as charged in Indictment #190-73S: count 1  breaking and entering with intent to rape; count 2  breaking and entering with intent to rob; count 3  assault with intent to rape; count 5  robbery; count 6  robbery while armed with a knife; count 7  robbery while armed with a gun, and count 8  threat to kill. He was sentenced on all counts to terms aggregating four to six years in State Prison.
The State's proofs disclosed that Miss W and Miss O were roommates in an apartment. Miss W testified that she was awakened at about 2:30 A.M. on September 26 by a man leaning beside her bed with a knife at her throat. He said, "Don't move, or you're dead." She described the man as having a stocking over his head holding his hair up. He had a receding hairline and was wearing makeup over his face with either a fake mustache or tape over a real mustache. He turned on the bathroom light. He placed tape, fortified by matchbooks, over her eyes and bound her hands with cord. The tape came off her eyes and, when he removed the stocking before leaving, she was then able to observe that he had long, dark brown, wavy hair. She recognized the intruder from his having been previously employed in the apartment house and identified him in and out of court as the defendant. At the time of the assault he was wearing a navy blue jacket and dark pants and she detected the odor *321 of grease. She observed him remove money from a pocketbook. He then removed the sheet, lifted her nightgown and removed her underpants, all the time keeping the knife at her throat. He started to molest her. When she told him she had just undergone lung surgery, he stopped and turned his attentions to her roommate. She heard him comment to Miss O that one on dope was unable to achieve an erection and that he would have to stick to robbery. She saw him holding a gun and before he left he tied her legs with a stocking.
Miss O testified that she was awakened at 2:30 A.M. and saw someone leaning over her roommate. When she asked what was going on the intruder, a man, put a knife to her neck and said, "One word and you are dead." He told her to place her head in the pillow and she did so. He then taped her eyes and mouth and tied her hands behind her back. He said he was going to rob them and asked where her pocketbook was located. She told him, he left the room and she heard him rummaging in the apartment. When she later looked in her pocketbook the money in it, as well as other money located in drawers, was missing. He then said he was going "to have one of them." He turned her over, lifted her nightgown, attempted fellatio and when she pleaded with him, he desisted. All the time he held the knife on her stomach. He removed her underpants and attempted to have intercourse but was unable to do so. He blamed his inability to achieve an erection on dope and said he would stick to robbery. He placed something in her hand that felt like a gun and warned them both not to call the police. She was unable to see the intruder during the entire incident and, as he left, he instructed them to count to 30. After he left she observed that the downstairs front window had been broken; it had not been broken when they retired. While the intruder was close to her she detected the odor of grease. As it developed, she knew defendant from his having worked around her apartment as a maintenance man.

*322 I
Defendant's chief assignment of error concerns the admission, over his objection, of the testimony of the witness K. The trial judge ruled that her testimony was admissible under Evid. R. 55 on the issue of identity. Miss K testified that on April 5, 1973 she lived next to a linen company (where defendant worked). At 12.30 A.M. she went into her kitchen and saw a white man there with a gun. She turned to run and he jumped her; they struggled; he threatened to kill her and she ceased struggling. He pushed her down on the bed, unscrewed the lightbulb in the lamp beside the bed and then placed tape over her face and eyes. He started kissing her, attempted intercourse but could not, and therefore coerced fellatio. He wore black pants and a blue denim jacket, smelled of grease, spoke with a soft southern accent and said he was black. He wore something dark on his head which came to a point at the top; it looked like a navy knit hat. He took no money, did not say he was on drugs, did not use a knife and did not have a mustache. Before he left he threw a blanket on the victim, told her to count and stated he would shoot if she moved too soon. Defendant's fingerprints were found on the lightbulb.
Evid. R. 55 provides:
Subject to Rule 47, evidence that a person committed a crime or civil wrong on a specified occasion, is inadmissible to prove his disposition to commit crime or civil wrong as the basis for an inference that he committed a crime or civil wrong on another specified occasion but, subject to Rule 48, such evidence is admissible to prove some other fact in issue including motive, intent, plan, knowledge, identity, or absence of mistake or accident.
It is well-recognized that the "average individual is prone to much more readily believe that a person is guilty of the crime charged if it is proved to his satisfaction that the defendant has committed a similar crime." State v. Hector, 19 Ohio St. 2d 167, 249 N.E.2d 912, 916 (Sup. Ct. 1969); State v. Harris, 105 N.J. Super. 319 (App. Div. *323 1969). "When other crime evidence is admitted a jury might tend to think of defendant as a bad person in general and thereby convict him * * * for that reason alone." State v. Wright, 132 N.J. Super. 130, 142 (App. Div. 1974), rev'd 66 N.J. 466 and dissenting opinion adopted. Such evidence has a high potential for prejudice and it is only admissible if it is relevant, tends to prove some fact in issue and "is not received simply to show the general disposition of the defendant to commit crime." State v. Wright, supra at 148. In order for evidence of a prior crime to be admissible on the issue of identity (for which it was offered here) the prior criminal activity with which defendant is identified must be so nearly identical in method as to earmark the crime as defendant's handiwork. The conduct in question must be unusual and distinctive so as to be like a signature, McCormick on Evidence (2 ed. 1972), § 190 at 449, and there must be proof of sufficient facts in both crimes to establish an unusual pattern. 1 Underhill's Criminal Evidence (6 ed. 1973), § 210 at 637; Mosley v. State, 211 Ga. 611, 87 S.E.2d 314 (Sup. Ct. 1955); Williams v. State, 110 So.2d 654 (Fla. Sup. Ct. 1959); Tarkington v. State 250 Ark. 972, 469 S.W.2d 93 (Sup. Ct. 1971); Nester v. State, 75 Nev., 41, 334 P.2d 524 (Sup. Ct. 1959); State v. Francis, 91 Ariz. 219, 371 P. 2d 97 (Sup. Ct. 1962).
In this case defendant's presence at the scene of the earlier attack on K was established by his fingerprints on the lightbulb.
We proceed to examine the similarities in the details of the attacks in both instances to see if there are sufficient similarities of novel or unusual means so as to permit the introduction of evidence of the first attack as bearing on the identity of the defendant as the person involved in the second.
Both attacks occurred late at night. Defendant knew the victims in both instances from having worked in their apartments and thus knew there were no men residing with them. In both instances the eyes of the victims were taped to conceal *324 the attacker's identity; he wore peculiar head gear, a dark jacket and pants. In both instances the attacker possessed a gun and upon leaving instructed the victims to count or he would shoot. The victims were threatened with death if they screamed. He smelled of grease, was unable to obtain an erection and resorted to fellatio.
Defendant stresses certain dissimilarities in the attacks. However, none is of such a nature as to eliminate him as being involved in the second crime. The jury was carefully instructed on the limited use they were to make of this evidence. Evid. R. 6. It was not error to admit the testimony of K for the limited purpose of establishing the identity of defendant.

II
Defendant elected to take the stand and testify in his own behalf. When the prosecutor sought to cross-examine him on the K incident, defendant claimed his privilege against self-incrimination, pointing out that an indictment concerning that crime was still pending. The judge overruled the objection and compelled defendant to testify. He did not err in doing so. Evid. R. 25. N.J.S.A. 2A:84A-19, which recognizes the privilege of a defendant to refuse to disclose any matter which might incriminate him, provides that when the accused in a criminal case voluntarily testifies upon the merits, he does not have a privilege to refuse to disclose in that action any matter relevant to any issue therein. Evid. R. 25(d). N.J.S.A. 2A:84A-19(d).
Since we hold that evidence of the attack upon K was relevant on the issue of identity, defendant was properly compelled to testify. State v. Zwillman, 112 N.J. Super. 6, 14 (App. Div. 1970), certif. den. 57 N.J. 603 (1971).

III
Defendant was convicted of breaking and entering with intent to rape W, breaking and entering with intent to *325 rob W, breaking and entering with intent to rape O and breaking and entering with intent to rob O. He argues that all four convictions should merge into one conviction for breaking and entering with intent to rob or commit rape. This contention has merit. The crime of breaking and entering is defined in N.J.S.A. 2A:94-1:
Any person who willfully or maliciously breaks and enters, or enters without breaking, any building, structure, room, ship, vessel, car, vehicle or airplane, with intent to kill, kidnap, rob, steal, commit rape, mayhem or battery, is guilty of a high misdemeanor.
The most significant element of the offense is the breaking and entering. If there is but one breaking and entering, there has been but one crime committed under the statute. The fact that defendant may have known that more than one person occupied the apartment and intended to rob and rape both does not justify multiple convictions for breaking and entering. To convict and punish for four violations of the statute prohibiting breaking and entering when but one criminal act has been committed is contrary to the settled principle that one may not be punished more than once for the same offense. State v. Best, 70 N.J. 56 (1976); State v. Jamison, 64 N.J. 363, 380 (1974).
In State v. Best, supra, the court recently held:
* * * Specifically, where one has committed a single criminal offense, he may not receive multiple convictions and sentences based on a multi-count indictment where each count therein sets forth what in essence is the same offense.
We hold that defendant committed but one offense of breaking and entering and the convictions on counts 1 and 2 of Indictment No. 189-73S and counts 1 and 2 of Indictment No. 190-73S merge into a single judgment of conviction for the offense of breaking and entering with intent to commit robbery and rape.
*326 The fact that defendant was armed with both a knife and a gun when he robbed the victims does not subject him to the increased penalty provided in N.J.S.A. 2A:151-5 more than once. The legislative intent in the passage of that statute was to punish for robbery while armed with a dangerous instrument. We discern no justification for multiple convictions for violation of that statute based upon the number of dangerous instruments on defendant's person at the time he committed the robbery.
Count 5 of Indictment No. 189-73S charging defendant with being armed with a knife when committing the robbery of W and count 6 of the same indictment charging him with being armed with a gun when committing the same robbery, should merge into one conviction for committing robbery of W while being armed with a knife and a gun. We hold that a similar merger occurred as to counts 6 and 7 of Indictment No. 190-73S, thus charging defendant with but one conviction of committing robbery while being armed with a knife and gun when robbing O.

IV
Defendant further argues in his main brief and in a supplemental pro se brief:
(1) The trial judge imposed a sentence based on illegal considerations;
(2) He erred in admitting the out-of-court identification of the defendant by W;
(3) It was error to admit inconsistent statements made by defendant to attack his credibility. (This was based on the contention that he had not received Miranda warnings at the time he made the statements);
(4) It was error to deny his motion for a mistrial based upon lunchtime proximity of the prosecutor to two jurors;
(5) The indictment improperly charged him with rape of O;
*327 (6) It was error to deny his motion for a mistrial based on newspaper publicity concerning the trial;
(7) The judge was guilty of unethical conduct;
(8) Defendant was not afforded full and complete discovery, and
(9) Expert testimony was improperly permitted to remain in the case.
We have carefully considered each of the foregoing arguments presented and conclude they are clearly without merit. R. 2:11-3(e) (2).
The convictions of breaking and entering in violation of N.J.S.A. 2A:94-1, as charged in counts 1 and 2 of Indictment No. 189-73S and counts 1 and 2 of Indictment No. 190-73S, are hereby merged into a single conviction of breaking and entering with intent to rape and rob, with a single sentence of three to four years in State Prison.
The two convictions of robbery of W while armed (contrary to N.J.S.A. 2A:151-5), as charged in counts 5 and 6 of Indictment No. 189-73S, are merged into a single conviction with a single consecutive sentence of one to two years in State Prison.
The convictions on two counts of robbery of O while armed (contrary to N.J.S.A. 2A:151-5) as charged in Counts 6 and 7 of Indictment 190-73S, are merged into a single conviction with a concurrent sentence of one to two years in State Prison.
The judgments of conviction and sentences imposed thereon are, in all other respects, affirmed.
Modified and remanded for the entry of an amended judgment in conformity with this opinion.