STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT, v. RAYMOND F. GARFOLE, DEFENDANT-APPELLANT.

Argued January 24, 1978—Decided June 1, 1978.

446

*Mr. Leonard Carafa* argued the cause for defendant-appellant.

*Mr. Solomon Rosengarten,* Deputy Attorney General, argued the cause for plaintiff-respondent (*Mr. John Degnan,* Attorney General of New Jersey, attorney; *Mr. Benjamin D. Leibowitz,* Deputy Attorney General, of counsel and on the brief).

The opinion of the court was delivered by

CONFORD, P. J. A. D. (temporarily assigned). A dissent in the Appellate Division, 148 *N. J. Super.* at 134, brings this appeal by defendant from his criminal conviction before the Court as a matter of right, *R.* 2:2-1(a). The dissent was confined to the issue of the rejection by the trial court of certain other-crimes evidence offered by defendant. This Court denied certification to defendant with respect to his claim of improper evidence of identification, both prior to trial and in court — an issue on which the Appellate Division was unanimous against defendant. 75 *N. J.* 12 (1977). We have examined the identification issue on its merits and conclude it lacks substance. In considering that issue we are not to be understood as necessarily holding that there is an appeal as of right as to an issue on which the Appellate Division is unanimous.

Defendant was convicted at a jury trial in March 1974 of threat to take life, assault with an offensive weapon, carnal abuse and lewdness, all allegedly committed in the course of a single episode on June 14, 1971 when an assailant accosted a sixteen year old boy (T. F.) and a fifteen year old girl (M. W.), threatened both and sexually molested

the girl. Defendant had been indicted also on charges arising out of five other comparable episodes, four of them on March 13, May 1, May 12 and May 14, all in 1971, and one on March 27, 1972. The charges arising out of the first four episodes were dismissed on motion of the State at the outset of this trial, apparently because the witnesses in those incidents were either unable to identify defendant or unwilling to undergo the experience of testifying in the matters. The gravamen of the ground of appeal to the Appellate Division which presently concerns us is the trial court's rejection of defendant's attempt at trial on cross-examination of a prosecution police witness to develop the facts concerning each of the four criminal episodes prior to that related to the instant trial. This attempt was for the purpose of establishing by the similarity of the conduct of the assailant in each incident that one person was responsible for all of them and that defendant was not that person because he had an alibi for all but two of the occasions involved.

The trial judge rejected the defendant's proffer summarily on the prosecutor's objection based on irrelevancy to the charges on which defendant was being tried. The judge stated that only if the prosecutor adduced other-crimes evidence against the defendant to establish his identity would he allow alibi evidence by defendant as to such other crimes. The Appellate Division affirmed, not on the rationale of irrelevancy but on the ground that the acts of the assailant or assailants in the several occurrences were as a matter of law not sufficiently similar to establish that one person was the perpetrator in all. 148 *N. J. Super.* at 131. This ruling was made after the court granted defendant's motion to expand the record on appeal to include the statements given to the police by the victims in the first four episodes.[1]

---

[1] Specifics as to the sixth incident are lacking, defendant not having submitted any victim's statement in relation thereto. However at

As to the fifth incident, that for which defendant was tried, he was unequivocally identified as the offender by the victim M. W. both in a lineup conducted September 14, 1972 and in court. The male victim T. F. could not make a definite identification either at the lineup or in court because the "body" was "different" but he said the face was the same. T. F. said defendant on both the occasion of the lineup and at trial was not as heavy as the assailant and his hair was a different color. The evidence was that the assailant held a gun to the youths, forced T. F. to turn aside, threatened to shoot him when he protested the treatment of the girl, and said he did not wish to rape the girl but only to "feel" her. He then required M. W. to remove her clothing, inserted his finger into her vagina, made her touch his penis and compelled her to perform fellatio on him. There was no sexual penetration. After the assault the man apologized and said he was sick.

An ample description of the details of the other incidents in question will be found in the opinions delivered by the Appellate Division judges and need not be repeated here. See 148 *N. J. Super.* at 132, 133, 139–140. The majority opinion emphasizes the differences and the dissenting opinion the similarities in the respective occurrences and attendant circumstances. In addition to the close time sequence of the first five episodes, it is to be noted that all but one occurred within the vicinity of the Cranford Junior High School and the other a half mile away. All the incidents transpired between 9:45 P.M. and 11:00 P.M. Defendant represented to the court that he would show that on four of the occasions he was at work for the Central Railroad in Jersey City at 11:00 P.M. He had no alibi for the date

trial the State conceded that the events in the fifth and sixth episodes showed the "same factual pattern."

Defendant's appellate briefs seek to bring the sixth episode within his alleged proffer. However, at trial he mentioned only the "prior" crimes, and, as noted, the expansion of record at the appellate level did not include any material as to the sixth incident.

of the incident tried as he was off duty that night. Defendant did not testify in his own defense.

The crucial legal issue in this case is the extent to which *Evid. R.* 55 and the decisions expounding it in the context of use of similar other-crimes evidence by the State against an accused are applicable when a defendant seeks to use such evidence for purposes of exculpation. The trial judge apparently thought such evidence when proffered by a defendant to be completely without relevance; the Appellate Division majority required the proof to meet the same "high degree of similarity" of offenses as is applicable when offered by the State. 148 *N. J. Super.* at 141. We differ with the views of both tribunals in these respects.

*Evid. R.* 55 prohibits the evidential use of the commission of crime by an accused on another occasion "to prove his disposition to commit" the crime for which he is being tried. However, "such evidence is admissible to prove some other fact in issue including motive, intent, plan, knowledge, identity, or absence of mistake or accident." The manifold kinds of situations in which other-crimes evidence is admissible on behalf of the State notwithstanding the primary exclusionary intent of the rule are well and thoroughly canvassed in the majority and dissenting opinions in *State v. Wright,* 132 *N. J. Super.* 130, 147 (App. Div. 1974), reversed on the dissent, 66 *N. J.* 466 (1975). See also *State v. Kociolek,* 23 *N. J.* 400, 418 (1957); *Report of the New Jersey Supreme Court Committee on Evidence* (1963) 101–104; *New Jersey Rules of Evidence* (1972) 211–225. Central to the issue implicated by the approach of the Appellate Division to defendant's proffer of proof here is the consideration that the exclusionary aspect of *Evid. R.* 55 is not founded upon the absence of any probative value of other-crimes evidence—indeed such value may be very high—but rather its undue psychological effect with a jury against a defendant. *New Jersey Rules of Evidence, op. cit. supra,* at 212. The law demurs at permitting a defendant to be convicted for a specific crime merely because his commission

of crimes in the past shows him to be a bad person or having a propensity to commit crime. *Ibid; McCormick, Evidence* 447 (2d ed. 1972); *State v. Sempsey,* 141 *N. J. Super.* 317, 322 (App. Div. 1976) certif. den. 74 *N. J.* 272 (1977); *State v. Wright, supra,* 132 *N. J. Super.* at 142.

 We may readily dispose of the merits of the State's objection at trial, sustained by the trial court, that defendant's proffer of other-crimes evidence was objectionable because not relevant to guilt of the offense under trial. The evidence clearly had a relevant potential when coupled with the offer to establish an alibi for some of the other criminal episodes. *McCormick* points out that the prosecutor may offer proof of other crimes by the accused "so nearly identical in method as to earmark them as the handiwork of the accused"; *op. cit.* at 449. See also *United States v. Cavallino,* 498 *F.* 2d 1200, 1206–1207 (5 Cir. 1974) and *People v. Matson,* 13 *Cal.* 3d 35, 117 *Cal. Rptr.* 664, 528 *P.* 2d 752, 755 (Sup. Ct. 1974) (both describing the principle as the *"modus operandi"* rule). The same concept of relevancy which justifies submission of other-crimes evidence by the State supports it when proffered by the defendant. Therefore, as will be seen hereinafter, the question here is not relevance as such, but the degree of relevance balanced against the counter considerations expressed in *Evid. R.* 4 of undue consumption of time, confusion of the issues and the misleading of the jury.

As noted above, the basis of the Appellate Division's affirmance was the supposed insufficiency of similarity of the series of offenses relied upon by defendant. In this regard the court imposed upon the defendant the same standards of degree of similarity of the several incidents as would apply if the offer of evidence was by the State. It required that "the device used [in the prior crimes] * * * be so unusual and distinctive as to be like a signature," citing authority applicable to efforts by the prosecutor to establish by other offenses by the defendant that all, includ-

ing the charge being tried, were committed by the accused. 148 *N. J. Super.* at 131.[2]

We are of the view, however, that a lower standard of degree of similarity of offenses may justly be required of a defendant using other-crimes evidence defensively than is exacted from the State when such evidence is used incriminitorily. As indicated above, other-crimes evidence submitted by the prosecution has the distinct capacity of prejudicing the accused.[3] Even instructions by the trial judge may not satisfactorily insulate the defendant from the hazard of the jury using such evidence improperly to find him guilty of the offense charged merely because they believe he has committed a similar offense before. Therefore a fairly rigid standard of similarity may be required of the State if its effort is to establish the existence of a common offender by the mere similarity of the offenses. *State v. Sempsey, supra,* 141 *N. J. Super.* at 323. But when the defendant is offering that kind of proof exculpatorily, prejudice to the defendant is no longer a factor, and simple relevance to guilt or inno-

---

[2]It is clear that the standards of high similarity of other offenses imposed when the State advances them only to draw the inference that the same person (the defendant) committed all of them and that being tried is not necessarily applicable when other-crimes evidence is used to establish defendant's guilt by showing motive, intent, absence of mistake or the like under the various other exceptions set forth in *Evid. R.* 55. See illustrations (1), (2), (4), (5), (6), (7), and (9), as distinguishable from (3), in McCormick's discussion, *op. cit., supra,* pp. 448–451.

Moreover, when the State uses other-crimes evidence offensively, it must adduce substantial proof of defendant's connection with such other crimes independent of the inferences to be drawn from their mere similarity. *McCormick, op. cit.,* at 451–452. See also *People v. Albertson,* 23 *Cal.* 2d 550, 557–581, 591–599, 145 *P.* 2d 7, 22 (Sup. Ct. 1944) (it "must be shown with reasonable certainty that the defendant committed the other crime.")

[3]For a discussion of the various kinds of prejudice to which other-crimes evidence may subject a defendant when offered by the State, see *Report of the New Jersey Supreme Court Committee on Evidence, op. cit., supra,* at 102.

cence should suffice as the standard of admissibility, since ordinarily, and subject to rules of competency, an accused is entitled to advance in his defense any evidence which may rationally tend to refute his guilt or buttress his innocence of the charge made. See *Evid. R.* 1(2). The application of a modified requirement of relevancy to the proffer by a defendant is additionally justified by the consideration that the defendant need only engender reasonable doubt of his guilt whereas the State must prove guilt beyond a reasonable doubt.

■ ■ It is well established that a defendant may use similar other-crimes evidence defensively if in reason it tends, alone or with other evidence, to negate his guilt of the crime charged against him. 2 *Wigmore, Evidence* (3d ed. 1940) § 304 at 205; § 341 at 245; *Holt v. United States,* 342 *F.* 2d 163 (5 Cir. 1965); *State v. Bock,* 229 *Minn.* 449, 39 *N. W.* 2d 887 (Sup. Ct. 1949); *Commonwealth v. Murphy,* 282 *Mass.* 593, 185 *N. E.* 486 (Sup. Jud. Ct. 1933). In each of the cited cases refusal of a trial court to admit such proof by a defendant resulted in an appellate reversal. But in each the probative force of the exculpatory proof, taken in entirety, including the similarity of other offenses relied on, was substantially stronger than the proffer made by defendant below.

In *State v. Bock, supra,* the defendant was charged with uttering a forged check which had been stolen, along with a checkwriting machine of the drawer company. The suspect had attempted to cash the check on the pretense of purchasing merchandise, and to receive change from the check on the purchase. Over objection of the defendant, evidence was adduced by the State of three similar fraudulent transactions by defendant a month later. The defendant then offered to prove that two other checks of the same company whose check he was accused of uttering, and substantially the same in all respects, were passed during the same time period by a person identified not to be the defendant; also that after defendant was convicted another individual was

found guilty of a similar offense and furnished an affidavit that he was the one who had passed the check involved in the other transactions proved by the State.

In *Commonwealth v. Murphy, supra,* the defendant was convicted on four complaints of similar occurrences wherein he was alleged to have undertaken to rent apartments from certain women and to have obtained cash from them as change from a forged check. It was conceded that all of these checks were drawn, endorsed and delivered by the same man, and each of the victims identified the defendant. The defendant offered in evidence one check drawn on the same bank and two others drawn on a different bank, all at about the same time, together with evidence of a handwriting expert that both the typewriting and the handwriting upon those checks were identical with those on the four checks on which defendant was charged. Moreover, the circumstances under which the other checks were used were exactly the same as those in the instances alleged against the defendant. It was further proffered that two of the recipients of the other checks would testify that defendant looked somewhat like but was not the man who gave and endorsed the checks to them; and, moreover, in the case of the third other incident, that the defendant was in custody on the date that that check was passed. Furthermore, the defendant had been acquitted on charges with respect to two of the other check incidents.

In *Holt v. United States, supra,* the defendant was charged on a federal indictment with having transported a stolen automobile from Dallas to Atlanta and with having sold it in Atlanta on the same day, using the name Earl Albert Boyd, and having transported another automobile received in trade for the first one from Atlanta to Dallas. There was evidence that 96 title certificate blanks had been stolen several months previously in Oklahoma. One of those title certificates was used in the transaction by which the first car was sold in Atlanta and another in a sale at Dallas of the car received in trade in Atlanta. Defendant was

identified by the other party in each transaction. The defense was mistaken identity. Defendant offered fairly strong alibi evidence. He also attempted to introduce evidence showing that he had twice before been identified as the person involved in similar stolen auto sales wherein the name Earl Albert Boyd was used by the seller and the same stolen certificates were used. Defendant also offered testimony by an FBI agent that, notwithstanding defendant had been positively identified as an Earl Albert Boyd who had sold a stolen automobile in Phoenix with one of the same stolen certificates on a certain date, that charge was later dismissed for insufficient evidence. The agent also testified that defendant had been identified as the perpetrator of another such sale in California on a day when the defendant was with the agent at a hearing in Oklahoma City on the Phoenix charge.

In reasoning common to the appellate opinions in each of the three cases just discussed the court in the *Bock* case said that if an inference that defendant uttered the check for which he was tried was permissible from proof by the State that he passed three others in similar circumstances "there appears to us no good reason why an opposite inference that defendant was not the person who offered [the check for which he was tried] is not permissible from a showing that checks identical with [the latter] were offered or passed on the same day and in a like manner by someone other than defendant." 39 *N. W.* 2d at 891.

If no other considerations came into play it might thus well be concluded that defendant's proffer of proof, as expanded at the Appellate Division level, was of sufficient probative value to warrant its admission into evidence for appraisal by the jury. But important coordinate factors, highly material to the sound administration of the trial process, require appraisal along with the factor of the degree of relevance of defendant's proffered proofs. These are those mentioned in *Evid. R.* 4 which, to the extent here material, reads:

The judge may in his discretion exclude evidence if he finds that its probative value is substantially outweighed by the risk that its admission will either (a) necessitate undue consumption of time or (b) create substantial danger of \* \* \* confusing the issues or of misleading the jury.

Defendant's proffer, as argued by the State, does create the possibility of undue consumption of time and of danger that the jury might be confused or misled. A trial of defendant's guilt of the misfeasances of June 14, 1971 would become expanded into one of determination as to his guilt *vel non* of each of the four prior occurrences and possibly of the sixth. Defendant's proofs of the other occurrences and his tendered alibis for four of them would generate four *mini*-trials as to the truth of those claims. Each of the victims involved in the four (or five) episodes other than that of June 14, 1971 would be subject to subpoena and possible examination and cross-examination with respect to identification or exculpation of defendant on each such occasion,[4] and each such episode would or could become the subject of a separate adversarial contest as to identity.[5]

Although Rule 4 considerations generally are mentioned in connection with the factor of undue prejudice to the defendant when other-crimes evidence is advanced offensively by the State, see *New Jersey Rule of Evidence, op. cit., supra,* at 213, and *State v. Wright, supra,* 132 *N. J. Super.* at 143, we are clear that it is highly appropriate for a trial judge, confronted with the opposing evidential con-

---

[4] We noted earlier that the State had dismissed the indictments charging defendant with the commission of these other crimes because of the unavailability or reluctance of witnesses to testify. If the defendant is confronted with similar obstacles in an attempt to prove the occurrences he will have to satisfy the judge at the *voir dire* that he will be able to adduce the necessary proofs at the trial.

[5] There is less danger of such confusion when the State offers such evidence against a defendant since it is under the burden of connecting the defendant with each other offense by substantial evidence. See note 2, *supra.*

siderations in such a situation as here presented, to weigh in the balance the concern of the law for orderly and efficient administration of the jury process. *Cf. Stoelting v. Hauck,* 32 *N. J.* 87, 103 (1960).

Accordingly, what is called for in the present case is a highly discretionary determination as to the admissibility of the defendant's proffered evidence which weighs and takes into account the degree of relevance of the disputed evidence as against the Rule 4 considerations which militate for rejection of it. Under Rule 4 the criterion is whether the considerations specified therein substantially outweigh the probative value of defendant's proffer. This is peculiarly a matter for decision, at least in the first instance, by the trial judge who tried this case. The judge should on the remand take such specific proof from defendant on *voir dire* as to his purported alibis as defendant wishes to submit so that the judge can be aided in formulating a fair impression of the degree of probative strength of the proffered proofs taken in entirety.[6] If the judge's ultimate decision is for admission of the evidence he shall then order a new trial; if his decision is for rejection, the judgment of conviction shall stand. *Cf. State v. Koch,* 118 *N. J. Super.* 421, 426, 434 (App. Div. 1972). In either case there may be summary review in this Court on notice by the aggrieved party within ten days after entry of judgment. We retain jurisdiction for that purpose.

The cause is remanded to the Law Division for further proceedings conforming to this opinion.

PASHMAN, J., dissenting. While I agree with the majority's view that the standard for admitting similar crimes

---

[6]Our directions here are based upon the precise state of the record of this case. They are not intended to circumscribe the discretion of a trial judge as to when, in other comparable situations on *voir dire*, full proofs rather than proffers shall be required as to particular elements of the evidence.

evidence on behalf of a defendant must be less rigorous than the *Evid. R.* 55 standard for admitting such evidence against him, its disposition of the appeal does not go far enough to assure justice to this defendant. I dissent from both the tone of the majority opinion and from its application of the principles announced therein to the instant case. It is rare indeed to see the impact of a salutary holding undercut in the very case in which it is announced. What the Court gives with one hand it takes away with the other, as its instructions to the trial court plainly foreordain the result of the limited remand, rendering that proceeding a meaningless exercise.

I. *The Effect of the Majority's Formulation is to Render Exculpatory Evidence Inadmissible*

The Court holds that ". . . when the defendant is offering that kind of proof exculpatorily, . . . simple relevance to guilt or innocence should suffice as to the standard of admissibility . . ." See *ante* at 452–453. Lest defendant rejoice prematurely, the majority hastens to add ". . . it is highly appropriate for a trial judge, confronted with the opposing evidential considerations in such a situation as here presented, to weigh in the balance the concern of the law for orderly and efficient administration of the jury process." See *ante* at 456–457. Finally, the trial judge is instructed to "weigh" the likelihood that defendant's proffered evidence is sufficiently relevant to overcome the risk that the trial would splinter into a series of "mini-trials" relating to uncharged offenses not properly before the jury.

In essence, the Court has determined that while evidence of similar offenses may be introduced by a defendant for exculpatory purposes, this opportunity depends upon the trial judge's determining that it is worth the court's time to hear it. Given today's swollen criminal trial dockets, it will come as no surprise to anyone that such evidence will seldom see the light of day, nor the ears of a juror.

Ostensibly, similar-crimes evidence is admissible to exculpate a defendant. Unfortunately, the Court has seen to it that this announced right is chimerical, having all the substance of a mirage. While the majority's formulation is more intellectually appealing than the rigid test of similarity utilized by the Appellate Division, the difference is one of mere words and not of practical import.

If the majority is concerned about court time and judicial resources to the point of excluding concededly relevant evidence on that basis, it should formulate a more explicit standard which acknowledges this practical impact. Perhaps the trial judge should be called upon to make a preliminary determination as to whether defendant's proofs are so highly relevant that they should be admitted without regard to *Evid. R.* 4 considerations. Thus, in a case such as this— where there are no serious doubts that all six offenses were committed by the same assailant—alibi evidence as to four of these offenses is singularly relevant. *Evid. R.* 4 should not even come into play, where as here, defendant's opportunity to receive a fair trial is at stake. If the relevance is not strong enough to meet that standard, which should of course still be something less than the *Evid. R.* 55 requirement of similarity between incidents ". . . so unusual and distinctive as to be like a signature," 148 *N. J. Super.* at 131, a balancing test is in order. The judge should balance the probative value of defendant's proffered proofs against the likelihood of substantial *Evid. R.* 4 complications, in order to determine whether the overall interests of justice would be best served by admitting the evidence.

Close decisions should be made with the knowledge that it is better to err on the side of admissibility, for nothing is so abhorrent as convicting an innocent person. Moreover, *Evid. R.* 4 itself recognizes this by allowing otherwise admissible evidence to be excluded only where ". . . its probative value is substantially outweighed" by the risk that ad-

mission will be unduly time-consuming or will tend to mislead or to confuse the jury.[1]

Of course, something more than the most remote possibility of relevance must be shown by defendant. For example, if the only common theme in all of these cases was that several women were molested by someone described as a white male in his thirties, exculpatory evidence that defendant could not have committed four of the six crimes because he was working would not be worthy of admission. However, the fact patterns of the assaults in the instant case are much more similar.

The two-tier test, *ante* at 459–460, would better impress on trial judges that the exclusion of relevant exculpatory evidence is not to be lightly undertaken. Unlike the majority

---

[1]The fear of undue consumption of time and of confusing the jury cannot support exclusion of highly probative evidence. In *United States v. Robinson*, 544 *F.* 2d 110 (2 Cir. 1976), defendant's conviction for bank robbery was reversed. Three men were involved and the identity of the third was in issue. The appeals court held that

[e]vidence to the effect that the third man in the bank resembled an individual suspected of two armed robberies that occurred in the Bridgeport area within six days prior to the bank robbery was clearly probative of the issue Robinson sought to prove, namely, that the third man was someone else.

[544 *F.* 2d at 113]

The court found that testimony by a jailer that the criminal on the film taken by the bank's surveillance camera was a person other than defendant should have been admitted. The facts did not support the trial court's ruling, which was based on the rationale that repetitive opinion testimony by both the prosecution and defense as to defendant's resemblance of the man in the film should be avoided.

In *Jackson v. State*, 551 *S. W.* 2d 351 (Tex. Cr. App. 1977), the court reversed defendant's conviction of robbery by firearms. It found error in the exclusion of testimony of a person to the effect that he had previously identified defendant as having committed another crime which was later discovered to have been committed by the same party who confessed in open court to having committed the crime for which defendant was being tried. Since the confessor was serving five life terms, his veracity was subject to doubt, but the witness who had earlier made the mistaken identification could have added to his credibility.

formulation, which belabors the fact that such evidence should be excluded when it will cause inconvenience, my formulation stresses that relevant evidence should be admitted unless the danger of great consumption of time or jury confusion is acute.[2] Moreover, where the relevance is great, I would require admission of such evidence in spite of any *Evid. R.* 4 problems it might pose. The duty of our judicial system is to dispense justice. While delay and confusion are elements that *may* thwart this ideal, withholding relevant evidence from jurors *will surely* serve to defeat it.

## II. *The Trial Judge's Failure to Admit Exculpatory Evidence in this Case was Plain Error*

By remanding this case to the trial judge who initially found that exculpatory evidence involving four similar crimes was not even relevant, the majority clearly signals that no new trial should be granted to this defendant. Since he did not find even minimal relevance in this evidentiary offering, the trial judge is not likely to now decide that such an offering is so relevant that it should be admitted despite possible *Evid. R.* 4 problems. I find the offering in this case to be sufficiently relevant to deserve admission under either the majority's standard or my own test. The inescapable conclusion is that a new trial is called for and the limited remand completely unnecessary.

This defendant was finessed out of a fair trial by an assistant prosecutor who was less than forthright in his representations to the court. Initially, the State was so com-

---

[2]As noted by the majority, see *ante* at 453, the lesser requirement of similarity for a defendant's proffer of similar crimes evidence to exculpate is partly the product of the fact that defendant need not prove his innocence. All he must do is establish some degree of doubt, rising to reasonable doubt, concerning his guilt. Before excluding relevant exculpatory evidence on *Evid. R.* 4 grounds, I would expect the trial judge to give defendant the benefit of all doubts on the question of admissibility.

pletely convinced that all of the crimes were committed by the same individual that defendant was indicted for all six offenses. In the weeks preceding the trial the State adamantly opposed severance, and actually filed a brief to that effect. The rest of the scenario would be comical but for the lamentable fact that a man's right to a fair trial was at stake.

Shortly before jury selection, the prosecutor asked the judge for a severance of all the grouped counts of the indictment, "in the interest of justice with respect to the defendant." He eloquently pointed to the prejudice defendant would face if he were tried for a multitude of similar crimes. As we shall see, these were crocodile tears. Defense counsel was obviously taken by surprise—this position was a complete turnabout by the State. He opposed the motion for severance because the defendant had a strong alibi for four of the six incidents, namely, that he had been at work at the time of their occurrence. The defense counsel was clearly concerned that if all counts were not moved at trial, defendant's opportunity to show that he was innocent of the related crimes would be curtailed. His foreboding proved to be well founded.

At first, the trial judge showed some appreciation of defendant's dilemma, as he observed that "there did appear to be a common scheme and perhaps so common that it would strongly point to the fact that one person committed these offenses." Severance was granted only as to the sixth offense which occurred some nine months after the fifth. The controlling consideration by the judge was that the sixth offense was too remote in time from the others to be heard with them.

Immediately thereafter, the prosecutor moved to dismiss all counts arising under the first four incidents, thus limiting the trial to the counts surrounding the fifth offense. He claimed that no witnesses were available for any of those incidents. By then, it should have been unmistakably clear

that the real reason the prosecutor had asked for severance was because he could not prove any of the first four cases.

Naturally, the defense counsel acquiesced in the dismissal of these counts. As Judge Antell's dissent in the Appellate Division correctly points out, the prosecutor's motive in seeking a severance must have been to preserve these charges as a club for use in gaining a plea bargain. Any doubt as to the truth of this view was removed with the prosecutor's next request. He moved that the court prevent defense counsel from asking any investigative questions concerning the first four incidents, since they were no longer before the court. Despite the fact that all parties were in agreement that the same person probably committed all of these crimes, the prosecutor wanted leave to present his strongest case while at the same time preventing the defense counsel from proving that none of the similar crimes was committed by defendant. So much for his concern that defendant not be unjustly prejudiced.

Despite this unfair conduct of the prosecutor, the trial judge refused to decide the issue in a hypothetical stance, preferring to await the concrete propounding of such a question by defense counsel at trial. The prosecutor then requested that a *voir dire* be held with respect to any proffered question. He then sought a ruling permitting him, under *Evid. R.* 55, to introduce evidence that defendant was identified as the assailant in the sixth incident by the victim. He also claimed that this evidence would help show a common scheme or plan on the part of the defendant. The prosecutor then highlighted the essential elements of the June 14, 1971 incident for which defendant was being tried. He represented to the court that the sixth incident of March 27, 1972 was substantially similar.[3]

---

[3]The specifics of incident six are unclear, except that the victim was apparently alone and was taken down a cellar stairway and molested. As in incident five and most of the others, the assailant apologized when he was through. According to the prosecutor she

Defense counsel objected to this stratagem by the prosecutor. He pointed out that the prosecutor had totally dropped his concern over undue prejudice to the defendant from grouping together the related offenses. He reminded the judge that the sixth case had been severed because its temporal remoteness was such that it was not sufficiently related to the other five offenses to be tried with them. Defense counsel asserted that it would be unfair to permit the prosecutor to effectively sever his four weakest cases and then to effectively rejoin the two strongest. He asked that the prosecutor stipulate the lack of identification in the four other cases. The prosecutor declined this offer, claiming that he had some witnesses in those cases who could identify defendant but that they were simply unable "mentally and emotionally" to come in and testify.

The judge ruled that a joint trial on two separate incidents involves different problems than does admitting evidence from a related, but severed, crime under *Evid. R.* 55 with an *Evid. R.* 6 limiting instruction. Under that instruction the jury would be told that the identification of defendant by the victim in the severed crime, incident six, was to be used only to prove defendant's identity by showing a common scheme in incidents five and six. The judge agreed to allow the introduction of the evidence pursuant to *Evid. R.* 55. However, at trial this evidence was never offered by the prosecutor.

If the sixth incident is so similar to the fifth that the exacting standards of *Evid. R.* 55 similarity are met, alibi evidence concerning incidents one through four is automatically admissible to exculpate defendant so long as those incidents are substantially as similar to incident five as is incident six. Otherwise, the Court is effectively holding that

---

was molested much like the victim in incident five. Considering his veracity in other matters, this might be a questionable fact for the trial court to have assumed. Nevertheless, I accept this representation since it was not refuted by the defendant.

even where strict *Evid. R.* 55 standards of similarity are met, the judge can use *Evid. R.* 4 to prevent evidence from being introduced by a defendant. Yet, the very holding of the majority is that defendant's showing of similarity of crimes need not reach the *Evid. R.* 55 level of similarity to be admissible. That is precisely the basis of the Court's reversal of the Appellate Division.

My conclusion is that incidents one through four are as similar to incident five as is incident six. In fact, some of them are much more similar. Without going into undue detail, I note that all of the assaults took place in the evening between 9:45 P.M. and 11:00 P.M. The first five were within a three-month period. The sixth was the only temporally remote incident, yet that very incident was found similar enough to the fifth for *Evid. R.* 55 purposes. All victims of the assailant's sexual attacks were young girls between 12 and 16 years of age. In four of six cases, including the one for which defendant was tried, the victim was with a companion. Yet, the victim in incident six was alone. Incident two was the only one in which no molestation occurred. In every incident except the sixth, the assailant brandished a handgun. All of the incidents except the third took place within a square quarter mile of Cranford Junior High School, and in that case the attacker stalked his victim while she was within that area. In all six incidents, the attacker indicated that he did not wish to hurt anyone. While the exact details of every act of molestation are not the same, they are not significantly dissimilar. A feature common to all of the sex attacks was carnal touching, but an absence of vaginal penetration.

I can only conclude that if the sixth offense was concededly similar enough to the fifth to satisfy the trial judge's perception of the showing required by *Evid. R.* 55, incidents one through four would all meet the lesser showing required for exculpatory admission. If he rules to the contrary on remand, I would certainly vote to reverse the trial judge. Hence, remand is a waste of time.

I agree with the characterization of the majority that *Holt v. United States*, 342 F. 2d 163 (5 Cir. 1965) ; *State v. Bock*, 229 *Minn.* 449, 39 *N. W.* 2d 887 (Sup. Ct. 1949) ; and *Commonwealth v. Murphy*, 282 *Mass.* 593, 185 *N. E.* 486 (Sup. Jud. Ct. 1933), all involved stronger showings of similarity of other offenses than was made at bar, which thus required that the exculpatory evidence offered be admitted. On the other hand, the similarities of the other crimes in these cases were so great that in all three the State would have been able to admit similar crimes evidence under *Evid. R.* 55 had the evidence been inculpatory. We have held that a defendant does not need to make such a showing to admit exculpatory evidence.

We are left with a defendant who may well be innocent, and yet not be permitted to present highly probative alibi evidence. The reason for this disadvantage was an erroneous ruling at trial. Closing our eyes to the specific facts of this case simply because the crimes were distasteful is unjust. It surely appears that the same person committed all of these crimes. It is clear that the first four offenses are not less similar to the fifth than was the temporally remote sixth incident. The trial judge ruled that the last two incidents were more similar than is necessary for admission of evidence of other crimes by a defendant for exculpatory purposes. Thus, I can only conclude that simple justice requires that defendant receive a new trial where he will be permitted to show that he could not have committed the first four offenses. Such a showing might well convince the jury that whoever the common perpetrator of these six despicable offenses was, it may not have been the defendant.

SULLIVAN, J. (dissenting). I agree with the majority opinion that the proffered evidence arguably had a "relevant potential." However, I cannot join in the remand to have the trial court make "a highly discretionary determination as to the admissibility of the defendant's proffered evidence which weighs and takes into account the degree of relevance

of the disputed evidence as against the Rule 4 considerations which militate for rejection of it." (p. 457). Such a remand would allow the trial judge, in his discretion, to grant defendant a new trial at which this evidence would be admissible.

Should this happen and once defendant is permitted to produce evidence as to the happening of these four or five other criminal episodes and then comes forward with proof of alibi for some of them, the State then would have the right either to produce proofs as to their non-similarity, or to present whatever evidence it had connecting defendant with them. The result would be that although defendant was being charged with only one crime involving one victim, the jury at the retrial would be asked to consider numerous collateral issues including similarity or non-similarity of these other offenses, and defendant's innocence or guilt as to them even though defendant is not on trial as to these offenses. The danger of confusing the issues and misleading the jury is enormous. Questions as to burden of proof, degree of proof required and instructions to the jury would be only some of the difficulties presented.

Because of these problems, I would not remand to the trial court. Instead I would hold that, conceding that the proffered evidence arguably had some relevant potential, the danger of confusing the issues and misleading the jury is so enormous and so far outweighed the claim of relevancy, that the evidence manifestly should have been rejected under Evidence Rule 4. Since the trial judge properly excluded the evidence, I would affirm.

Justice SCHREIBER joins in this dissent.

*For remandment*—Chief Justice HUGHES, Justices CLIFFORD and HANDLER and Judge CONFORD—4.

*For reversal and remandment*—Justice PASHMAN—1.

*For affirmance*—Justices SULLIVAN and SCHREIBER—2.