**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0041-17T2

STATE OF NEW JERSEY,

    Plaintiff-Appellant,

v.

LETICIA GARDNER and
YVONNE STRICKLAND[1],

    Defendants-Respondents.

_____

Argued February 15, 2018 — Decided July 20, 2018

Before Judges Rothstadt and Gooden Brown.

On appeal from Superior Court of New Jersey,
Law Division, Essex County, Indictment No.
15-12-2841.

Tiffany M. Russo, Special Deputy Attorney
General/Acting Assistant Prosecutor, argued
the cause for appellant (Robert D. Laurino,
Acting Essex County Prosecutor, attorney;
Tiffany M. Russo, of counsel and on the
brief).

David J. Bruno and Robert A. Bianchi, argued
the cause for respondent Leticia Gardner (The
Bianchi Law Group, LLC, and Einhorn, Harris,
Ascher, Barbarito & Frost, PC, attorneys;

_____

[1] Respondent Yvonne Strickland has not filed a brief.

David J. Bruno and Matheu D. Nunn, of counsel
and on the brief).

PER CURIAM

On December 3, 2015, defendants Leticia Gardner and Yvonne Strickland were charged in an Essex County indictment with second-degree conspiracy, N.J.S.A. 2C:5-2; second-degree theft by deception, N.J.S.A. 2C:20-4(a); and fourth-degree falsifying or tampering with records, N.J.S.A. 2C:21-4(a). The indictment stemmed from allegations that, in 2011, defendants submitted false closing documents to the Department of Housing and Urban Development (HUD) in connection with Gardner's purchase of a house in Avenel. By leave granted, the State appeals from a May 1, 2017 Law Division order granting Gardner's motion to sever defendants for purposes of trial and a July 20, 2017 order denying the State's motion for reconsideration. We affirm.

According to the State's theory of the case, Gardner was required to sell her previous residence in East Orange before closing on the loan to purchase the Avenel house. On October 25, 2011, Strickland submitted an application for HUD financing, signed by Gardner, falsely reporting that Gardner had sold her East Orange home when, in fact, the house was in foreclosure. During the investigation, Gardner made statements to investigators in which she referred to Strickland as her "associate" and alleged

that Strickland assisted in preparing the mortgage application. Strickland allegedly sent the false documents to her "business partner," Louis Charles, from "her email account on letterhead of 'DCAPS, LLC,' which [was] a company formed and owned by Strickland." Charles, a licensed mortgage broker, forwarded the documents to HUD, and, as a result, Gardner successfully closed on the Avenel house.

Prior to indicting defendants, the State charged Charles in a complaint-warrant with fourth-degree securing the execution of documents by deception, N.J.S.A. 2C:21-16, and third-degree forgery, N.J.S.A. 2C:21-1(a)(3). During a proffer session, Charles professed innocence and incriminated defendants, claiming he met Gardner in February 2011 through Strickland, who introduced her as "one of [her] best friend[s] and business partner." Charles claimed he agreed to help Gardner complete an application for a mortgage loan to purchase a new home at Strickland's request. He alleged he did not know the documents he forwarded to the mortgage lender were false, nor did he have any reason to think they were. To support his claims, Charles provided incriminating documents, including a 2009 civil consumer fraud complaint filed by the New Jersey Attorney General charging Strickland and several others with mortgage fraud. After receiving this information, the State administratively dismissed the criminal complaint against Charles

A-0041-17T2

and pursued the criminal prosecution of Strickland and Gardner, leading to the return of the joint indictment.

Strickland moved to sever, arguing that Gardner's statements to investigators implicated her and were the "functional equivalent of and tantamount to an interlocking confession prohibited by . . . State v. Young, 46 N.J. 152 (1965) and Bruton v. United States, 391 U.S. 123 (1968)." On February 14, 2017, the motion judge denied severance, concluding that although Gardner's statements "may create hostility between co-defendants, it [did] not rise to the level [of] prejudice . . . sufficient to sever a trial," and "mere antagonism [was] not sufficient grounds for severance." Additionally, the judge distinguished State v. Weaver, 219 N.J. 131, 157 (2014), because, unlike the co-defendants in Weaver who "each named the other as the shooter, the co-defendants here [had] yet to blame the other for any wrong doing." The judge acknowledged Strickland's "fear of possible prejudice" if additional "inculpatory evidence [was] produced," but believed "carefully worded jury instructions" could properly address her concerns.

While Strickland's motion to sever was pending, the State moved pursuant to N.J.R.E. 404(b) to admit a September 12, 2011 consent judgment Strickland had entered into with the Attorney General to resolve the 2009 mortgage fraud case against her. In

the consent judgment, "without admission of any liability or wrongdoing of any kind," Strickland agreed to "comply fully with all [f]ederal and [s]tate laws, including but not limited to the New Jersey [Consumer Fraud Act, N.J.S.A. 56:8-1 to -210], the New Jersey RICO statute, [N.J.S.A. 2C:41-1 to -6.2], and the Licensed Lenders Act."[2]  She further agreed not to "engage in any unfair or deceptive acts or practices in the conduct of any business," to pay $22,000 in "[s]ettlement of the [a]ction," to face increased penalties if she were to engage in any mortgage fraud related activities, and to abide by strict reporting requirements.

On April 7, 2017, following oral argument, the judge denied the State's motion, finding that the consent judgment failed to meet the third and fourth prongs of the test for admissibility set forth in State v. Cofield, 127 N.J. 328, 338 (1992).[3] Acknowledging that the consent judgment was not the result of an adjudication or trial and did not require Strickland to admit

---

[2]  Prior to 2009, both mortgage lending and consumer loans were subject to the New Jersey Licensed Lenders Act.  L. 1996, c. 157. However, mortgage lending is now subject to the New Jersey Residential Mortgage Lending Act, N.J.S.A. 17:11C-51 to -89.

[3]  Under the four-prong Cofield test, other-crimes evidence is admissible only if: (1) relevant to a material issue; (2) similar in kind and reasonably close in time to the offense charged; (3) supported by clear and convincing evidence; and (4) its prejudice does not outweigh its probative value.  127 N.J. at 338.

liability or wrongdoing of any kind, the judge explained that admitting the judgment

> would have the exact effect and result of attributing criminal intent, wrongdoing, or liability to Strickland. It would have the effect of a prior conviction, when it is not.
>
> In addition, any discussion about the three separate 2008 transactions [embodied in the Attorney General's civil mortgage fraud complaint] would certainly enhance the possibility of confusion with the issues to be resolved in this case by the jury.

After the judge denied the State's N.J.R.E. 404(b) motion, Gardner moved to sever in order to pursue a third-party guilt defense based on the 2009 mortgage fraud complaint and 2011 consent judgment. On May 1, 2017, during oral argument on the motion, Gardner argued she was entitled to present, in her defense, the 2011 consent judgment as well as a potential victim identified in the 2009 civil complaint whom, like Gardner, Strickland allegedly "took advantage of." Gardner asserted that because the court had already barred the evidence as unfairly prejudicial to Strickland, separate trials were necessary. The State objected and, contrary to its prior position, argued the consent judgment did not meet even the lesser burden for a defendant's use of 404(b) evidence because "it would mislead and confuse the jury" and was "unfairly prejudicial" to the State.

6

After oral argument, the judge issued an oral decision, determining that, although the evidence did not "survive the Cofield test, it [did] pas[s] the less rigorous balancing test of [N.J.R.E.] 403." As a result, the judge granted severance to allow "Gardner the opportunity to mount the defense that she [was] [c]onstitutionally entitled to present" and "to allow [her] the full exercise of her due process rights." The judge declined, however, to "address the issue of . . . antagonistic defense[s]," noting that it was "not relevant" at that point, and entered a memorializing order to sever defendants on the same date.

The State moved for reconsideration of the May 1, 2017 severance order, distinguishing Weaver, where "the evidence that was sought to be admitted was supported by a Judgment of Conviction," from this case, where "the [c]onsent [j]udgment verbatim [did] not admit any liability or wrong doing of anything." According to the State, the consent judgment did "not negate the guilt of . . . Gardner" or "nullify any of the other acts," including Gardner's purchase of a BMW "within days of the closing of the [Avenel] property," Strickland's use of the BMW, Strickland's addition to Gardner's insurance policy, or the "payment arrangements [for the insurance policy] between the two individuals." The State asserted that the evidence linked defendants "in a way that show[ed] that Ms. Gardner was not

completely innocent and was not completely [naïve] as to what was going on."

On July 20, 2017, the judge issued an order and written decision, denying the State's motion and upholding his initial decision. He determined the State only sought reconsideration "to reargue the motion for severance," and because it "did not agree with the outcome of the court's balancing of [the N.J.R.E. 403] factors," which were impermissible grounds for reconsideration under State v. Puryear, 441 N.J. Super. 280, 294 (App. Div. 2015). Noting that "[t]he factual distinctions (or similarities) between the Weaver . . . [and Gardner] cases [were] irrelevant" to his ruling, the judge acknowledged the Weaver Court's general proposition that "[a]n accused is entitled to advance in his defense any evidence which may rationally tend to refute his guilt or buttress his innocence of the charge made." Thus, the judge "concluded that the prejudice to Gardner's due process rights and her ability to present her defense outweighed the needs of judicial efficiency . . . and any prejudice that could accrue to the [S]tate by having to try the cases separately." This appeal followed.

On appeal, the State raises the following single point for our consideration:

POINT I

THE TRIAL JUDGE ERRED BY, AFTER CORRECTLY
DENYING DEFENDANT STRICKLAND'S MOTION FOR
SEVERANCE AND DENYING THE STATE'S MOTION TO
ADMIT [N.J.R.E.] 404(B) EVIDENCE, GRANTING
DEFENDANT GARDNER'S MOTION FOR SEVERANCE.

"The decision whether to grant severance rests within the trial court's sound discretion and is entitled to great deference on appeal." State v. Brown, 118 N.J. 595, 603 (1990); see also State v. Sterling, 215 N.J. 65, 73 (2013) ("A court must assess whether prejudice is present, and its judgment is reviewed for an abuse of discretion."). A court may try two or more defendants together "if they are alleged to have participated in the same act or transaction or in the same series of acts or transactions constituting an offense or offenses." R. 3:7-7. Indeed, there is a "general preference to try co-defendants jointly," State v. Robinson, 253 N.J. Super. 346, 364 (App. Div. 1992), particularly when "much of the same evidence is needed to prosecute each defendant," Brown, 118 N.J. at 605. In some circumstances, a joint trial is "'preferable' because it serves judicial economy, avoids inconsistent verdicts, and allows for a 'more accurate assessment of relative culpability.'" Weaver, 219 N.J. at 148 (quoting Brown, 118 N.J. at 605).

"Nevertheless, a single joint trial, however desirable from the point of view of efficient and expeditious criminal

9

adjudication, may not be had at the expense of a defendant's right to a fundamentally fair trial." State v. Sanchez, 143 N.J. 273, 290 (1996) (quoting United States v. Echeles, 352 F.2d 892, 896 (7th Cir. 1965)). Thus, if the court finds that permissible or mandatory joinder will prejudice one or both defendants, it may "grant a severance of defendants[] or direct other appropriate relief." R. 3:15-2(b). However, "[t]he test for granting severance . . . is a rigorous one." Brown, 118 N.J. at 605-06. "The danger by association that inheres in all joint trials is not in itself sufficient to justify a severance, provided that by proper instructions to the jury, the separate status of co-defendants can be preserved." Id. at 605. Nonetheless, "[i]t is possible that the level of antagonism between co-defendants, despite the absence of mutually exclusive defenses, can become so intense as to justify a severance." Id. at 608.

One such basis for severance arises when restrictions on the admissibility of exculpatory evidence, such as proof of a co-defendant's prior bad acts under N.J.R.E. 404(b), would unfairly prejudice a defendant at a joint trial, but the restrictions would be unnecessary in separate trials. See Weaver, 219 N.J. at 157-58. Generally, evidence of other crimes or bad acts is inadmissible "to prove the disposition of a person in order to show that such person acted in conformity therewith" on another

occasion. N.J.R.E. 404(b). However, a defendant "may use other-crimes evidence in support of his [or her] defense 'if in reason it tends, alone or with other evidence, to negate his [or her] guilt of the crime charged.'" Weaver, 219 N.J. at 157 (quoting State v. Garfole, 76 N.J. 445, 453 (1978)).

Such defensive use of other crimes or bad acts evidence, "sometimes referred to as 'reverse 404(b)' evidence," is not subject to the more stringent test of N.J.R.E. 404(b) admissibility set forth in Cofield, 127 N.J. at 338, "because 'an accused is entitled to advance in his [or her] defense any evidence which may rationally tend to refute his [or her] guilt or buttress his [or her] innocence of the charge made.'" Weaver, 219 N.J. at 150 (quoting Garfole, 76 N.J. at 453). Instead, "[a]dmissibility of this evidence is governed by N.J.R.E. 401, not N.J.R.E. 404(b)." Weaver, 219 N.J. at 157. Thus, "simple relevance to guilt or innocence" is sufficient, as "prejudice to the defendant is no longer a factor." Id. at 150 (quoting Garfole, 76 N.J. at 452-53). Evidence is relevant if it has "a tendency in reason to prove or disprove any fact of consequence to the determination of the action." N.J.R.E. 401.

In addition to relevance, this "more relaxed standard" still requires the court to "determine that the probative value of the evidence is not substantially outweighed by any of the [N.J.R.E.]

11

403 factors" for exclusion. <u>Weaver</u>, 219 N.J. at 151; <u>see also</u> N.J.R.E. 403. Under this standard, "the question . . . is not relevance as such, but the degree of relevance balanced against the counter considerations expressed in [N.J.R.E. 403] of undue consumption of time, confusion of the issues[,] and the misleading of the jury." <u>Garfole</u>, 76 N.J. at 451. "This determination is [also] highly discretionary." <u>Weaver</u>, 219 N.J. at 151.

Another basis for severance arises "when a defendant's and a co-defendant's defenses are not simply at odds, but are 'antagonistic at their core,' meaning that they are mutually exclusive and the jury could believe only one of them." <u>Id.</u> at 149 (quoting <u>Brown</u>, 118 N.J. at 605-07). Conversely, "[i]f the jury can return a verdict against one or both defendants by believing neither, or believing portions of both, or . . . believing both completely, the defenses are not mutually exclusive." <u>Brown</u>, 118 N.J. at 606. A court should not grant severance merely because "one defendant seeks to escape conviction by placing guilt on his or her co-defendant." <u>Ibid.</u>

Here, we discern no abuse of discretion in the judge's decision that Gardner's defensive use of the evidence constitutes

sufficient grounds for severance.[4]  Strickland's 2011 consent judgment is relevant to Gardner's case because it rationally supports her defense that she "was a mere dupe of a sophisticated individual versed in mortgage fraud."  Indeed, the State admitted as much in its N.J.R.E. 404(b) motion to introduce the consent judgment in its case in chief, where it argued the "conduct that was relevant to the civil judgment in . . . 2011 is substantially similar to the conduct . . . charged in this indictment."[5]  According to the State, not only was the conduct substantially similar, it was "sophisticated" because "there are institutions, . . . mechanisms, and procedures in place that are more complex than what perhaps a normal layperson may understand."  This type of evidence, standing alone or in combination with other evidence, may refute Gardner's guilt or buttress her claim of innocence.  See Weaver, 219 N.J. at 150.  Reverse 404(b) evidence

---

[4]  We note the judge's ruling is entirely consistent with his prior ruling denying the State's application to admit the 2011 consent judgment under N.J.R.E. 404(b) based on, among other things, its prejudice to Strickland outweighing its probative value.

[5]  We note the State's contrary argument in its merits brief that "[t]he consent judgment was the result of litigation that involved an entirely different scheme" and "is proof of no fact of consequence to this case."  On the contrary, the compelling nature of the evidence is demonstrated by its role in the State's decision to dismiss the criminal complaint against Charles once his proffer session revealed the existence of the 2009 complaint and inevitably led to the discovery of the 2011 consent judgment.

does not have to refute a defendant's guilt on its own in order to be admissible; a defendant can use it in conjunction with other evidence. See Weaver, 219 N.J. at 150; see also Garfole, 76 N.J. at 453. Thus, the judge reasonably concluded the consent judgment met the simple relevance standard for admissibility of reverse 404(b) evidence.

Likewise, turning to the N.J.R.E. 403 factors, the judge properly concluded the factors did not outweigh the probative value of the evidence. Garfole, 76 N.J. at 453-54; see also Weaver, 219 N.J. at 157. Although the judgment did not require Strickland to admit any wrongdoing, it prohibited her from engaging in "any unfair or deceptive acts or practices in the conduct of any business" and imposed a sanction. As the State alleged in its own N.J.R.E. 404(b) motion, Strickland allegedly "engaged in criminal behavior of the exact same nature six weeks later," which was "contrary to [her] affirmative obligations in [the consent judgment]." The judge expressed his intent to limit the scope of inquiry into the underlying facts of the 2009 mortgage fraud case in order to avoid any potential confusion of issues or misleading of the jury. Under these circumstances, we agree with the judge's determination that any applicable N.J.R.E. 403 factors did not outweigh Gardner's right to due process and to present a defense.

We also find no error in the judge's denial of the State's motion for reconsideration.  See <u>Puryear</u>, 441 N.J. Super. at 294. Because we discern no abuse of discretion in either of the judge's decisions, like the judge, we need not address whether Gardner's and Strickland's positions were antagonistic and mutually exclusive as an alternative basis for severance.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION