**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NOS. A-0009-17T3
                A-0189-17T3

STATE OF NEW JERSEY,

      Plaintiff-Respondent,

v.

KEVIN AVILES,

      Defendant-Appellant.

_____

STATE OF NEW JERSEY,

      Plaintiff-Respondent,

v.

TOMMY PHAM,

      Defendant-Appellant.

_____

          Argued (A-0009-17) and Submitted (A-0189-17)
          November 20, 2019 – Decided December 10, 2019

          Before Judges Haas and Mayer.

On appeal from the Superior Court of New Jersey, Law Division, Hudson County, Indictment No. 15-08-1116.

Jane M. Personette argued the cause for appellant Kevin Aviles in A-0009-17 (Law Offices of Brian J. Neary, attorneys; Brian J. Neary, of counsel and on the brief; Jane M. Personette, on the brief).

Stephanie Davis Elson, Assistant Prosecutor, argued the cause for respondent State of New Jersey in A-0009-17 (Esther Suarez, Hudson County Prosecutor, attorney; Alanna M. Jereb, Assistant Prosecutor, on the brief).

Joseph E. Krakora, Public Defender, attorney for appellant Tommy Pham in A-0189-17 (Stephen P. Hunter, Assistant Deputy Public Defender, of counsel and on the brief).

Esther Suarez, Hudson County Prosecutor, attorney for respondent State of New Jersey in A-0189-17 (Alanna M. Jereb, Assistant Prosecutor, on the brief).

PER CURIAM

In these back-to-back appeals, which we now consolidate for purposes of this opinion, defendants Kevin Aviles and Tommy Pham challenge their convictions and sentences following a joint jury trial involving murder and weapons possession charges in connection with the stabbing death of the victim, Kermy Amparo. We affirm in all respects in both appeals.

I.

2

A Hudson County grand jury returned an indictment charging Aviles with first-degree murder, N.J.S.A. 2C:11-3(a)(1) and/or N.J.S.A. 2C:11-3(a)(2) (count four); fourth-degree unlawful possession of a knife, N.J.S.A. 2C:39-5(d) (count five); and third-degree possession of a knife for an unlawful purpose, N.J.S.A. 2C:39-4(d) (count six). The indictment charged Pham with these same offenses in counts one, two, and three, respectively.[1]

Following a multi-day trial, the jury convicted defendants of second-degree reckless manslaughter, N.J.S.A. 2C:11-4(b)(1), as a lesser-included offense of first-degree murder, and acquitted defendants of the weapons charges. The judge sentenced each defendant to nine years in prison for reckless manslaughter, subject to an eighty-five percent period of parole ineligibility, and three years of parole supervision pursuant to the No Early Release Act, N.J.S.A. 2C:43-7.2. These appeals followed.

On appeal, Aviles raises the following contentions:

---

[1] Two of defendants' friends, Ricardo Gallardo and Lee Lozada, were charged in the remaining counts of the fourteen-count indictment with committing aggravated assault with a deadly weapon upon a different victim, Chamir Garcia, and associated weapons offenses. Prior to defendants' trial, Gallardo pled guilty to third-degree aggravated assault upon Garcia with a deadly weapon, N.J.S.A. 2C:12-1(b)(2), and received a five-year term of probation conditioned upon 364 days in jail. Lozada pled guilty to third-degree possession of a knife for an unlawful purpose, N.J.S.A. 2C:39-4(d), and was sentenced to four years of probation.

A-0009-17T3

POINT I

THE TRIAL COURT'S DECISION TO CHARGE THE LESSER-INCLUDED OFFENSES OF AGGRAVATED MANSLAUGHTER AND MANSLAUGHTER OVER THE DEFENSE OBJECTION CONSTITUTED ERROR REQUIRING VACATION OF DEFENDANT'S CONVICTION.

POINT II

THE [TRIAL] COURT ERRED IN PRECLUDING DEFENDANT FROM CROSS-EXAMINING DETECTIVE BISONE REGARDING EVIDENCE OF A CO-DEFENDANT'S PRIOR ARREST FOR A STABBING, THEREBY UNDULY INFRINGING ON DEFENDANT'S ABILITY TO PRESENT EVIDENCE OF THIRD PARTY GUILT.

POINT III

THE CONVICTION MUST BE SET ASIDE AS THE JURY VERDICT WAS INCONSISTENT.

POINT IV

CUMULATIVE TRIAL ERRORS IN THE CONTEXT OF THE PROCEEDINGS BELOW DEPRIVED DEFENDANT OF A FAIR TRIAL AND WARRANT REVERSAL.

POINT V

THE SENTENCE IMPOSED BY THE COURT IS EXCESSIVE.

a.     The [c]ourt below failed to credit [defendant] with all applicable mitigating factors.

4

    b.      The [c]ourt below erred in applying aggravating factor 3.

    c.      The [c]ourt below erred in failing to sentence [d]efendant as if convicted of offenses one degree lower.

Pham presents the following arguments:

POINT I

THE FAILURE TO GIVE THE COMPLETE CHARGE ON CAUSATION WAS PLAIN ERROR BECAUSE CAUSATION WAS A MATERIAL ISSUE IN DISPUTE. U.S. Const. Amend V, VI, XIV; N.J. Const. Art. I, ¶¶ 1, 10. (Not Raised Below).

POINT II

THE FAILURE TO CONSIDER DEFENDANT'S YOUTH REQUIRES A REMAND FOR RESENTENCING. U.S. Const. Amend. VII, XIV; N.J. Const. Art. I, ¶¶ 1, 12.

After reviewing the record in light of the contentions raised by each defendant on appeal, we affirm.

II.

To place these issues in their proper context, we begin by reciting the salient facts surrounding the death of Kermy Amparo from multiple stab wounds to his chest and abdomen. After spending the late evening with his friends, Divanna Cedeno and Chamir Garcia, at a barbeque and later a bar, Amparo drove

the trio to a house in Jersey City where another friend, Amanda Guzman, was hosting a birthday party for herself.[2]  Guzman had not invited Amparo to the party, but when she saw him and his friends outside and across the street from the house at around 2:00 a.m., she was excited to see them.[3]

While Guzman was talking to Amparo, she saw Aviles, Pham, and two of their close friends, Gallardo and Lozada, sitting on the steps and leaning on a gate of a house next to the site of the party.  Guzman and Amparo walked across the street to the party house, and then returned to the other side so Amparo could introduce Guzman to Cedeno.  Guzman then crossed the street again to say hello to Pham.

Amparo and Garcia called out to Guzman and asked what they were doing next because the party was breaking up.  Guzman told them to cross the street to where she was standing next to Aviles, Pham, Gallardo, and Lozada.  When he did so, Amparo told Guzman he felt awkward because the four men were staring at them, and he thought they might want to fight.

---

[2]  During the course of the evening, between twenty-five and forty individuals had attended the party.

[3]  Guzman testified she and Amparo had a romantic relationship at some point in the past and were now friends, and that she was also familiar with Garcia. She did not know Cedeno.

A-0009-17T3

Guzman asked the four men, "There's no problem here, right?"  Gallardo responded that Amparo and Garcia can "get beat up right here[,]" and Garcia replied, "So, what's up then?"  Guzman told the group to calm down and, as the four men approached Amparo and Garcia, she tried to get between them. Guzman testified that Garcia walked off the sidewalk toward the street and she focused her attention on calming him down.

Guzman then saw Pham and Amparo fighting behind her.  As she screamed at them to stop, Guzman saw Aviles "jump in" to join the fight against Amparo a few seconds later.  Guzman observed Pham "swinging" at Amparo, "sort of like uppercutting."  Guzman tried to hold Pham's arms behind his back, but she was not able to stop him.  Guzman testified that Aviles and Pham were "both grabbing [Amparo] and doing whatever they could to hurt him."  It looked to her like they were standing "in a huddle" on the sidewalk.  The autopsy revealed no defensive wounds on Amparo, indicating that he was "unable to put up a fight."

Guzman did not see Garcia, Gallardo, or Lozada during the attack on Amparo by Aviles and Pham.  To Guzman, it looked like "two attacking one and [Aviles and Pham] were kind of both just trying to hurt" Amparo and "get their hits in."  At the end of the attack, one of the assailants threw Amparo to the

7

ground.  Guzman then saw Lozada come and kick Amparo in the head before running away.  Guzman did not see Aviles or Pham with a weapon at any point, and stated that she also did not see Gallardo or Lozada carrying a knife.

Not wanting to "snitch" on her friends, Guzman did not immediately tell the police who had attacked Amparo.  Instead, she reported that five white males were the assailants.  However, she later admitted that "it had to be [Pham] or [Aviles]," and she repeated this assertion at the trial.  Guzman testified she previously thought that Gallardo could have done the stabbing, and that she could not see well due to her poor eyesight, darkness, and the stress of the events.  However, Guzman again confirmed that Garcia, Gallardo, and Lozada were in the street during the incident, while Aviles, Pham, and the victim remained behind her.

Cedeno testified she saw five individuals involved in a brawl that evening. She then saw Garcia "running frantically" away while two men followed him down the block and around the corner.

Cedeno claimed she did not see anyone attack Amparo, but later saw him lying on the ground on his back with wounds on his stomach and near his heart. Cedeno stated she saw an individual running away from Amparo, but she could

8

not identify him, other than saying he had long hair and was "indigenous-looking."

Jose and Carmen Rosario[4] lived next door to the house where Guzman held the party. In the early morning hours, Jose saw a group of four or five men fighting outside the house. He and Carmen also saw two women yelling at the men to stop. Jose testified he saw one individual holding Amparo on the ground while the others were punching him. Jose went outside and yelled at the men, who then ran away. The two women stayed behind and began arguing. Jose and Carmen identified one of the women as Guzman.

Jose tried to render aid to Amparo. His chest wound was bleeding and Jose got a towel to try to cover it until the ambulance arrived. Amparo was pronounced dead at the hospital. An autopsy revealed that Amparo suffered three major injuries, a stab wound to the chest, and two to the abdomen. Although all three wounds were potentially fatal, the stab wound to the chest caused significant damage to Amparo's heart, which would be a more rapid cause of death than the other stab wounds.

---

[4] Because these witnesses share the same surname, we refer to them by their first names to avoid confusion. In doing so, we intend no disrespect.

    A-0009-17T3

Defendants did not testify at the trial. Pham presented the testimony of a detective, who stated that Cedeno told him on the night of the attack that both Amparo and Garcia were stabbed by the same individual, who she could not identify.

## III.

In Point I of his brief, Aviles argues that the trial judge erred by granting the State's request to charge aggravated manslaughter and reckless manslaughter as lesser-included offenses of first-degree murder. We disagree.

It is well settled that "[a]ppropriate and proper charges are essential for a fair trial." State v. Baum, 224 N.J. 147, 158-59 (2016) (alteration in original) (internal quotation marks omitted) (quoting State v. Reddish, 181 N.J. 553, 613 (2004)). Jury instructions must give a "comprehensible explanation of the questions that the jury must determine, including the law of the case applicable to the facts that the jury may find." Id. at 159 (quoting State v. Green, 86 N.J. 281, 287-88 (1981)).

In order to charge a lesser-included offense, the judge must first find that "there is a rational basis for a verdict convicting the defendant of the included offense." State v. Cassady, 198 N.J. 165, 178 (2009) (quoting N.J.S.A. 2C:1-8(e)). The judge must consider whether the evidence at trial "presents a rational

basis on which the jury could acquit the defendant of the greater charge and convict the defendant of the lesser." Ibid. (quoting State v. Brent, 137 N.J. 107, 117 (1994)). A trial court should consider the evidence in the light most favorable to the defendant when making this determination. State v. Mauricio, 117 N.J. 402, 412 (1990).

Applying these principles, we conclude that the evidence amply supported an instruction on the lesser-included offenses of aggravated manslaughter and reckless manslaughter. "There is no dispute that aggravated manslaughter and [reckless] manslaughter are true lesser-included offenses to murder, and can be charged, if warranted, in a murder case with or without consent." State v. Ramsey, 415 N.J. Super. 257, 263-64 (App. Div. 2010) (footnote omitted). Our Supreme Court has described the "key distinctions" between these three offenses as follows:

> To be guilty of [serious bodily injury] murder, the defendant must have knowingly or purposely inflicted serious bodily injury with actual knowledge that the injury created a substantial risk of death and that it was highly probable that death would result. In aggravated manslaughter, by contrast, the defendant must have caused death with an awareness and conscious disregard of the probability of death. If, instead, the defendant disregarded only a possibility of death, the result is reckless manslaughter.

11

[State v. Jenkins, 178 N.J. 347, 363 (2004) (citations and internal quotation marks omitted).]

Here, there was obviously a rational basis in the record to support the judge's decision to charge the jury on murder, aggravated manslaughter, and reckless manslaughter. Aviles and Pham attacked Amparo, got him into a "huddle," and tried to "get their hits in." During the attack, Amparo was stabbed in the chest and abdomen and died from those wounds.

Based on the evidence presented, the jury could have determined that Aviles (and Pham) had the purposeful, knowing, or reckless state of mind to support a conviction for murder or either of the two lesser-included offenses. On the one hand, the jury could have concluded that Aviles knowingly attacked the victim with the actual knowledge that stabbing him would create a substantial risk of death and that it was highly probable that death would result. On the other, the evidence was also clearly sufficient to enable the jury to find, as it did, that Aviles was aware of, yet disregarded only a possibility that Amparo would die from a stab wound inflicted during the fight.

Under these circumstances, we discern no error in the judge's decision to charge the two lesser-included offenses.

IV.

A-0009-17T3

In Point II of his brief, Aviles asserts that under N.J.R.E. 404(b), the judge should have allowed him to cross-examine a police detective regarding evidence that Gallardo had been arrested in 2012, two years before the offenses involved in the present case, for stabbing a guest at a party. Again, we disagree.

We review a judge's ruling on admission of evidence of third-party guilt for abuse of discretion. State v. Cotto, 182 N.J. 316, 333 (2005). The trial court must provide criminal defendants the opportunity to present a complete defense including that someone else committed the crime charged. Id. at 332. Such a defense includes the right to introduce evidence of third-party guilt if the proof offered has a rational tendency to engender a reasonable doubt with respect to an essential feature of the State's case. Ibid. This requires the defendant to offer evidence that "creates the possibility of reasonable doubt" by demonstrating some link between the third party and the victim. Id. at 333. Because this is a fact-sensitive inquiry, the court has broad discretion to admit or preclude such evidence. Ibid.

It is not enough to prove some hostile event and leave its connection to the crime charged to mere conjecture. State v. Sturdivant, 31 N.J. 165, 179 (1959). "There must be some link between the evidence and the victim or the crime." State v. Koedatich, 112 N.J. 225, 301 (1988).

A-0009-17T3

As the State correctly points out, Aviles and Pham argued throughout the trial that other party guests, including Gallardo, were responsible for attacking Amparo. Indeed, the judge specifically instructed the jury on defendants' third-party guilt argument in his final charge to the jury by stating:

> In this case, defendants contend that there is evidence before you indicating that someone other than the defendants may have committed the crime or crimes and that evidence raises a reasonable doubt with respect to their guilt.

> In this regard, I charge you that a defendant in a criminal case has the right to rely on any evidence produced at trial that has a rational tendency to raise a reasonable doubt with respect to his own guilt. I have previously charged you with regard to the State's burden of proof, which never shifts to the defendant.

> The defendants do not have to provide or produce evidence that proves the guilt of another person, but may rely on evidence that creates a reasonable doubt. In other words, there is no requirement that this evidence proves or even raises a strong probability that someone other than the defendants committed the crime.

> You must decide whether the State has proven the defendants' guilt beyond a reasonable doubt, not whether the other person or persons may have committed the crime.[5]

---

[5] This instruction followed the model jury instruction. See Model Jury Charges (Criminal), "Third Party Guilt Jury Charge" (approved March 9, 2015).

14                                                                                    A-0009-17T3

Thus, the judge clearly permitted Aviles to pursue a third-party guilty defense at the trial.

However, Aviles wanted to bolster that argument by introducing evidence of Gallardo's prior arrest during his cross-examination of a detective. This officer had apparently been involved in investigating that incident, but had no first-hand knowledge of what occurred. Other than asserting that Gallardo had been arrested in 2012 for stabbing a guest at a party, defense counsel proffered no firm details concerning what had transpired. Even more significantly, the State represented that a grand jury declined to indict Gallardo on any charge and, therefore, there was no judicial determination that Gallardo committed a "prior bad act" as alleged by Aviles.

Aviles based his argument for admitting the detective's testimony on N.J.R.E. 404(b), which states:

> [e]xcept as otherwise provided by Rule 608(b), evidence of other crimes, wrongs, or acts is not admissible to prove the disposition of a person in order to show that such person acted in conformity therewith. Such evidence may be admitted for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident when such matters are relevant to a material issue in dispute.

A-0009-17T3

When the State proffers 404(b) evidence, a four-pronged analysis, outlined in State v. Cofield, must take place. 127 N.J. 328, 338 (1992). However, "[w]hen a person charged with a criminal offense seeks to use other-crimes evidence defensively, the Cofield standard does not govern because 'an accused is entitled to advance in his defense any evidence which may rationally tend to refute his guilt or buttress his innocence of the charge made.'" State v. Weaver, 219 N.J. 131, 150 (2014) (citing State v. Garfole, 76 N.J. 445, 453 (1978)).

Therefore, "when it is the defendant who 'offer[s] that kind of proof exculpatorily … simple relevance to guilt or innocence'" is the deciding factor for admissibility. Ibid. (alteration in original) (citing Garfole, 76 N.J. at 452-53). Evidence is relevant where there is a "logical connection between the proffered evidence and a fact in issue, i.e., whether the thing sought to be established is more logical with the evidence than without it." State v. Hutchins, 241 N.J. Super. 353, 358 (App. Div. 1990).

Despite this more relaxed standard, however, "trial courts must still determine that the probative value of the evidence is not substantially outweighed by any of the Rule 403 factors, which are 'undue prejudice, confusion of issues, or misleading the jury,' and 'undue delay, waste of time, or

needless presentation of cumulative evidence.'" Weaver, 219 N.J. at 151. "This determination is highly discretionary." Ibid.; see State v. Cook, 179 N.J. 533, 568-69 (2004) (where the court found that although the other-crimes evidence was relevant, its probative value was "minimal" because there was "nothing distinctive to tie" a sexual assault with a non-sexual abduction).

Applying these principles, we discern no basis for disturbing the judge's decision to bar the admission of hearsay testimony from a police detective concerning the 2012 incident, which resulted in no criminal charges being filed against Gallardo or any adjudication of guilt. As the judge found, the very sparse details defense counsel was able to provide surrounding Gallardo's arrest were not "remotely relevant" or even "tangential to this case." As N.J.R.E. 404(b) clearly states, a prior bad act "is not admissible to prove the disposition of a person in order to show that such person acted in conformity therewith." Thus, the judge properly denied Aviles's request to admit this improper propensity evidence through a witness who had no first-hand knowledge of what may have happened at the 2012 party.

V.

Aviles's contention in Point III of his brief that he was entitled to an acquittal based on the jury's alleged inconsistent verdict requires only brief

comment. Inconsistent verdicts are permitted in New Jersey. State v. Banko, 182 N.J. 44, 53-55 (2004). "[S]o long as the evidence [is] sufficient to establish guilt on the substantive offense beyond a reasonable doubt[,]" an inconsistent verdict will not invalidate a conviction. Id. at 55 (quoting State v. Petties, 139 N.J. 310, 319 (1995)). Because the jury was entitled to evaluate each count of the indictment on its own merits, and there was sufficient evidence in the record to support this defendant's conviction beyond a reasonable doubt, we discern no basis for disturbing that conviction.

## VI.

Aviles argues in Point IV of his brief that the cumulative prejudice of the errors he raises deprived him of a fair trial. Having rejected defendant's argument that any reversible error occurred during his trial, we also reject his cumulative error argument.

## VII.

In Point I of his brief, Pham argues for the first time on appeal that the judge should have instructed the jury that in order to convict Pham of reckless manslaughter, Amparo's death had to be

> within the risk of which the actor is aware, . . . or if not, the actual result must involve the same kind or injury or harm as the probable result and must not be too remote, accidental in its occurrence, or dependent on

another's volitional act to have a just bearing on the actor's liability or on the gravity of his offense.

This argument clearly lacks merit.

"A trial court is vested with discretion in delivering the jury instructions that are most applicable to the criminal matter before it." State v. Funderburg, 225 N.J. 66, 80 (2016) (citing State v. Ernst, 32 N.J. 567, 583-84 (1960)). To assess the soundness of the jury instruction, we consider "how and in what sense, under the evidence before them, and the circumstances of the trial, would ordinary . . . jurors understand the instructions as a whole." State v. Savage, 172 N.J. 374, 387 (2002) (alteration in original) (internal quotation marks omitted) (quoting Crego v. Carp, 295 N.J. Super. 565, 573 (App. Div. 1996)).

"[I]n reviewing any claim of error relating to a jury charge, the 'charge must be read as a whole in determining whether there was any error[.]'" State v. Gonzalez, 444 N.J. Super. 62, 70-71 (App. Div. 2016) (quoting State v. Torres, 183 N.J. 554, 564 (2005)). If, like here, defense counsel did not object to the jury charge at trial, the plain error standard applies. State v. Singleton, 211 N.J. 157, 182-83 (2012). We reverse only if the error was "clearly capable of producing an unjust result," id. at 182 (quoting R. 2:10-2), and consider the totality of the circumstances when making this determination. State v. Marshall,

123 N.J. 1, 145 (1991). Applying these standards, we conclude there was no error, let alone plain error.

Here, the trial judge followed the Model Jury Charge for reckless manslaughter under N.J.S.A. 2C:11-4(b)(1).[6] We have consistently held that a jury charge that tracks the language of the governing statute, and which is consistent with the applicable Model Jury Charge, is not plainly erroneous. State v. Rodriguez, 365 N.J. Super. 38, 53-54 (App. Div. 2003). Consistent with the Model Charge, the judge carefully instructed the jury

> that the State must prove beyond a reasonable doubt
> . . . that the defendant caused Kermy Amparo's death.
> You must find that Kermy Amparo would not have
> died, but for the defendant's conduct. If after
> consideration of all the evidence, you are convinced
> beyond a reasonable doubt that the defendant recklessly
> caused Kermy Amparo's death, then your verdict must
> be guilty of reckless manslaughter.

Contrary to Pham's newly-minted argument, the judge was not required to give the jury an additional instruction dealing with the causal relationship[7]

---

[6] Model Jury Charges (Criminal), "Reckless Manslaughter" (revised March 22, 2004).

[7] This optional portion of the Model Charge dealing with causal relationship states:
> Causation has a special meaning under the law.
> To establish causation, the State must prove two
> elements, each beyond a reasonable doubt:

20

between Pham's conduct and Amparo's death. As the <u>Model Charge</u> provides, this charge is only necessary in fact scenarios similar to that addressed by our Supreme Court in <u>State v. Martin</u>, 119 N.J. 2 (1980).

In <u>Martin</u>, there were "divergent factual versions" presented by the State and the defense that "g[a]ve rise to different theories of causation." <u>Id.</u> at 16. Per the State's rendition of the events, the defendant deliberately set a fire on the ground floor of an apartment building using kerosene as an accelerant that caused the death of an individual who was passed out in an upstairs apartment. <u>Id.</u> at 7. But, according to the defense, defendant never intended to harm the victim but, instead, lit a paper bag on fire, which he expected would extinguish itself after merely make a mess. <u>Id.</u> at 6. Defendant argued that "supervening

---

First, that but for the defendant's conduct, the victim would not have died.

Second, [the victim's] death must have been within the risk of which the defendant was aware. If not, it must involve the same kind of injury or harm as the probable result of the defendant's conduct and must also not be too remote, too accidental in its occurrence, or too dependent on another's volitional act to have a just bearing on the defendant's liability or on the gravity of his/her offense. In other words, the State must prove beyond a reasonable doubt that [the victim's] death was not so unexpected or unusual that it would be unjust to find the defendant guilty of reckless manslaughter.

A-0009-17T3

causes broke the chain of causation" between his action and the victim's death, and that the victim's death was not a "foreseeable, intended, or probable consequence of his conduct." Id. at 9. Under these circumstances where the nexus between the defendant's act and the ultimate outcome was at issue, the Court held that the additional causal relationship charge should be given. Id. at 14-17.

Here, Pham did not assert there was an intervening cause between the attack on Amparo and his death minutes later. Instead, Pham raised a straight-forward third-party guilt defense in which he argued that he was not responsible for what happened to Amparo because the stabbing was carried out by some other individual. As noted earlier, the judge fully instructed the jurors on this defense by presenting the third-party guilt charge to them as part of his final instructions. Thus, the jury had the opportunity to determine whether it was Aviles and Pham, or some other individual, who stabbed and killed Amparo.

Considering, as we must, the jury instructions as a whole, we detect no error in the causation charge the judge provided to the jury. In addition, Pham's "failure to interpose a timely objection constitutes strong evidence that the error belatedly raised here was actual of no moment." State v. Tierney, 356 N.J. Super. 468, 481-82 (App. Div. 2003) (quoting State v. White, 326 N.J. Super.

304, 315 (App. Div. 1999)).  Therefore, we reject Pham's contention on this point.

## VIII.

In the final arguments in each of their briefs, defendants assert that their sentences were excessive.  We disagree.

Trial judges have broad sentencing discretion as long as the sentence is based on competent credible evidence and fits within the statutory framework.  State v. Dalziel, 182 N.J. 494, 500 (2005).  Judges must identify and consider "any relevant aggravating and mitigating factors" that "are called to the court's attention[,]" and "explain how they arrived at a particular sentence."  State v. Case, 220 N.J. 49, 64-65 (2014) (quoting State v. Blackmon, 202 N.J. 283, 297 (2010)).  "Appellate review of sentencing is deferential," and we therefore avoid substituting our judgment for the judgment of the trial court.  Id. at 65.

We are satisfied the judge made findings of fact concerning aggravating and mitigating factors that were based on competent and reasonably credible evidence in the record, and applied the correct sentencing guidelines enunciated

in the Code in the case of both Aviles and Pham.  Accordingly, we discern no basis to second-guess the sentences.[8]

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

---

[8]  As for the balance of any of defendants' arguments not expressly discussed above, they are without sufficient merit to warrant discussion in a written opinion.  R. 2:11-3(e)(2).